B104 (FORM 104) (08/07)                                                          EDVA

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) 15-03001 |
|---|---|

| PLAINTIFFS Sheila A. Williams | DEFENDANTS Green Tree Servicing |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.) Larry L. Miller, Esq. Miller Law Group, P.C. | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only) ☒ Debtor  ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor  ☐ Other ☐ Trustee | PARTY (Check One Box Only) ☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin ☒ Creditor  ☐ Other ☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint to Determine the Extent and Validity of a Secured Claim and to Avoid the Lien of said Claimant.

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property – §542 turnover of property
☐ 12-Recovery of money/property – §547 preference
☐ 13-Recovery of money/property – §548 fraudulent transfer
☐ 14-Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☑ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge – §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability – §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability – §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability – §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability – §523(a)(5), domestic support
☐ 68-Dischargeability – §523(a)(6), willful and malicious injury
☐ 63-Dischargeability – §523(a)(8), student loan
☐ 64-Dischargeability – §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa. et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Sheila A. Williams | BANKRUPTCY CASE NO.<br>14-36073 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District of Virginia | DIVISION OFFICE<br>Richmond | NAME OF JUDGE<br>Keith L. Phillips |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF<br>Sheila A. Williams | DEFENDANT<br>Green Tree Servicing | ADVERSARY<br>PROCEEDING NO.<br>15-03001 |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>Eastern District of Virginia | DIVISION OFFICE<br>Richmond | NAME OF JUDGE<br>Keith L. Phillips |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Larry L Miller<br>Larry L. Miller, Esq.<br>VSBNO.43345 | | |
| DATE<br>06/08/15 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Larry L. Miller | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, *unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants**. Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys**. Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand**. Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

*Per LBR 7003-1, in the EDVA, a properly completed Adversary Proceeding Cover Sheet is required.

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

In re:  Sheila A. Williams                                    Chapter 13
                                                              Case No.14-36073
              Debtor
_____/

Sheila A. Williams
          Plaintiff,                              Adversary Proceeding No. 15-03001-KLP
          v.
Green Tree Servicing, LLC,
and Bank of America, NA
          Defendants,
and

R. Brian Ball and Paul S. Bliley,
Deed of Trust Trustees
          Defendants.
_____/


### AMENDED COMPLAINT TO DETERMINE
### THE EXTENT AND VALIDITY AND PRIORITY
### OF LIEN PURSUANT TO 11 U.S.C. SECTION 506

### TO THE HONORABLE JUDGE PHILLIPS, U.S. BANKRUPTCY JUDGE

COMES NOW Plaintiff Sheila A. Williams by counsel, and presents this complaint to determine the validity, extent and priority of a second trust of deed, which is the second Deed of Trust owned by Bank of America, N.A., and serviced by Green Tree Servicing, LLC ("Defendants") under 11 U.S.C. § 506(a), and in support thereof states to the Court as follows:

1.      This Complaint has been amended to add the following necessary parties: Bank of America, NA, and Trustees R. Brian Ball and Paul S. Bliley.

2.      This court has jurisdiction over this matter under §28 U.S.C. 1334 and 28.

3.      This proceeding is a core proceeding as defined in 28 U.S.C. §157(b)(2)(B) and (K).

4.      This Complaint is filed under Local Bankruptcy Rule 7001 to determine the validity, extent, and priority of a lien or other interest in property.

5.      On November 11, 2014 Sheila A. Williams ("Plaintiff") filed for relief under Chapter 13 of Title 11, United States Code with Carl M. Bates appointed as the Trustee of Plaintiff's case.

6.      Plaintiff is the Debtor in the associated Chapter 13 bankruptcy case now pending before this Court.

7.      Defendant, Green Tree Servicing, LLC, is a corporation authorized to do business in the Commonwealth of Virginia.

8.      Defendant, Bank of America, N.A. is a corporation authorized to do business in the Commonwealth of Virginia.

9.      At the time of the filing of the Chapter 13 petition in this case, and now, Plaintiff is the owner of certain real property is described as 5801 Towles Mills Road Partlow, VA 22534 (the "Property"), and is more particularly known as:

> A copy of the Deed dated September 12, 2014, for the Property is attached hereto as Exhibit A and incorporated by this reference.

Plaintiff granted a first Deed of Trust to PNC Mortgage, a division of PNC Bank successor in interest to National City Bank[1] on which is owed the amount of approximately $215,920.00 as indicated on Schedule D attached hereto as Exhibit B and by this reference is incorporated.

10.      The second Deed of Trust is dated January 4, 2007, for $49,734.00, filed as instrument number 200100000421 in the Circuit Court Land Records of Spotsylvania County, Virginia, which shows the original Lender to be National City Bank, was assigned to Bank of America, NA, and serviced by Green Tree Servicing, LLC.  Said Deed of Trust also shows R. Brian Ball and Paul S. Bliley as the Trustees ("Second Deed of Trust").  Copies of the Second Deed of Trust and Assignment of Deed of Trust to bank of America, NA are collectively attached hereto as Exhibit C.

11.      Plaintiff  listed the Property value at $176,300.00 on Schedule A – Real Property as filed as part of her Chapter 13 petition.  Copy of Schedule A is attached hereto as Exhibit D and by this reference is incorporated.

12.      Plaintiff's valuation reflects County of Spotsylvania Real Estate Tax Assessment dated December 5, 2014, indicating the Property's value at $176,300.00.  Copy of County of Spotsylvania Real Estate Tax Assessment is attached hereto as Exhibit E and by this reference is incorporated.

---

[1] On October 24, 2008, PNC Financial Services acquired National City Bank.

13.    The Second Deed of Trust claim is wholly unsecured and is not an allowable secured claim under Bankruptcy Code Section 506 (a) because the value of the Property is fully encumbered by and entirely subject to the superior 1st lien of PNC Mortgage. The second Deed of Trust claim is a wholly unsecured claim under Section 506 (a), based on the Plaintiff's valuation of $176,300.00.

14.    As a wholly unsecured claim, the anti-modification provisions of Bankruptcy Code § 1322 (b) (2) do not apply to the second Deed of Trust claim.

15.    If a lien purports to secure a claim against the debtor that is not an allowed secured claim under Bankruptcy Code Section 506 (a), said claim is void under Bankruptcy Code Section 506 (d), unless certain limited exceptions are satisfied under that subsection.

16.    Said lien of Defendant is void under Bankruptcy Code Section 506 (d) because it purports to secure a claim against the Plaintiff that is not an allowed secured claim under 506 (a).

17.    Plaintiff's counsel will submit to the Court entry for an Order voiding the Defendants' lien, which Order would be separately recorded by the Plaintiff's counsel in The Clerk's Office of Spotsylvania County upon completion of the Plaintiff's Chapter 13 Plan and discharge.

WHEREFORE, the Plaintiff respectfully prays this Court declare the lien on the Property in favor of Defendants by way of the Second Deed of Trust be avoided and or stripped off as being unsecured, and that Defendants be ordered to take such as needed to immediately release the lien and the Second Deed of Trust, upon entry of Plaintiff Chapter 13 Discharge Order and deliver proof of same to the undersigned attorney for Plaintiff within 30 days from entry of the Discharge Order at no charge or fee to Plaintiff, and award Plaintiff such other and further relief as is deemed just and proper.

Respectfully submitted,

SHEILA A. WILLIAMS

/s/ Larry L Miller
Counsel for Plaintiff

Dated: June 4, 2015

Larry L Miller, Esq.
VSBNO.43345
MILLER LAW GROUP, P.C.
1160 Pepsi Place, Suite 341
Charlottesville, VA 22901
Phone (434) 974-9776

3

### SERVICE LIST

Serve:  Green Tree Servicing, LLC
P.O. Box 6154
Rapid City, SD 57709-6154

Green Tree Servicing, LLC
Attention: Bankruptcy Department
P.O. Box 0049
Palatine, IL 60055-0049

Sheila A. Williams
5801 Towles Mills Road
Partlow, VA 22534

Bank of America, NA
31 West Patrick Street
Frederick, MD 21701

Bank of America, NA
Attn: Brian Moynihan
Chairman of the Board
And Chief Executive Officer
100 North Tryon Street
Charlotte, NC 28202

Williams Mullen
Attn: R. Brian Ball and Paul S. Bliley
P.O. Box 1320
Richmond, VA 23218-1320

EXHIBIT

A

Instrument Control Number

FILED
SPOTSYLVANIA COUNTY, VA
CHRISTALYN M. JETT
CLERK OF CIRCUIT COURT

**Commonwealth of Virginia**

**Land Record Instruments**

**Cover Sheet - Form A**

| FILED AT | Sep 18, 2014 01:42 pm |
|---|---|

[ILS Cover Sheet Agent Online Version 2.3.1.27]

INST. # 140014346
TOTAL PAGES 0004

WHT

| | | | |
|---|---|---|---|
| T A X | C O R P | Date of Instrument | [ 09/12/2014 ] |
| | | Instrument Type | [ DQC ] |
| E X E M P T | | Number of Parcels | [ 1 ] |
| | | Number of Pages | [ 0 ] |
| | | City ☐ County ☒ | [ Spotsylvania County ] |

(Box for Deed Stamp Only)

**First and Second Grantors**

| | Last Name | First Name | Middle Name | Suffix |
|---|---|---|---|---|
| ☐☐ | [ Klos ] | [ Wendra ] | [ Catherine ] | [ ] |
| ☐☐ | [ Williams ] | [ Sheila ] | [ Ann ] | [ ] |

**First and Second Grantees**

| | Last Name | First Name | Middle Name | Suffix |
|---|---|---|---|---|
| ☐☐ | [ Williams ] | [ Sheila ] | [ Ann ] | [ ] |
| ☐☐ | [ ] | [ ] | [ ] | [ ] |

| Grantee Address | (Name) | [ Sheila Ann Williams ] |
|---|---|---|
| | (Address 1) | [ 5801 Towles Mill Rd ] |
| | (Address 2) | [ ] |
| | (City, State, Zip) | [ Partlow VA 22534 ] |

| Consideration [ 0.00 ] | Existing Debt [ 0.00 ] | Assumption Balance [ 0.00 ] |
|---|---|---|

Prior Instr. Recorded at: City ☐ County ☒ [ Spotsylvania County ]      Percent. in this Juris.(%) [ 100 ]
Book [ ] Page [ ]      Instr. No [ ]

| Parcel Identification No (PIN) | [ ] |
|---|---|
| Tax Map Num. (if different than PIN) | [ # 72-9-1-0 ] |
| Short Property Description | [ Single Family Home ] |

| Current Property Addr. (Address 1) | [ 5801 Towles Mill Road ] |
|---|---|
| (Address 2) | [ ] |
| (City, State, Zip) | [ Partlow ] [ VA ] [ 22534 ] |

| Instrument Prepared by | [ Sheila Ann Williams ] |
|---|---|
| Recording Paid for by | [ Sheila Ann Williams ] |
| Return Recording to (Name) | [ Sheila Ann Williams ] |
| (Address 1) | [ 5801 Towles Mill Rd ] |
| (Address 2) | [ ] |
| (City, State, Zip) | [ Partlow VA 22534 ] [ ] [ ] |
| Customer Case ID | [ ] [ ] [ CS-928998 ] |

Cover Sheet Page # 1 of 1

Recording requested by: *Sheila Ann Williams*    Space above reserved for use by Recorder's Office

When recorded, mail to:

Name: *Sheila Ann Williams*

Address: *5801 Towles Mill Rd*

City/State/Zip: *Partlow VA*
*22534*

Document prepared by:

Name *Sheila Ann Williams*

Address *5801 Towles Mill Rd*

City/State/Zip *Partlow VA 22534*

Property Tax Parcel/Account Number: *#72 -9 -1 -0*

# Quitclaim Deed

This Quitclaim Deed is made on *Sept 12, 2014*                      , between

*Sheila Ann Williams + Wendra C. Klos* , Grantor of *5801 Towles Mill Rd*

_____ , City of *Partlow*                    , State of *VA*                    ,

and *Sheila Ann Williams*          , Grantee, of *5801 Towles Mill Rd*

_____ , City of *Partlow*                    , State of *VA*

For valuable consideration, the Grantor hereby quitclaims and transfers all right, title, and interest held by

the Grantor in the following described real estate and improvements to the Grantee, and his or her heirs

and assigns, to have and hold forever, located at *5801 Towles Mill Rd*

_____ , City of *Partlow*                    , State of *VA*                    :

Subject to all easements, rights of way, protective covenants, and mineral reservations of record, if any.

Taxes for the tax year of *2013-2014* shall be prorated between the Grantor and Grantee as of the date of

recording of this deed.

Quitclaim Deed Pg.1 (11-12)

Dated: _____9/12/14_____

_Wendra C. Klos_
Signature of Grantor

WENDRA C. KLOS
Name of Grantor

_Teresa A. Wells_
Signature of Witness #1

Teresa A. Wells
Printed Name of Witness #1

_William Harris_
Signature of Witness #2

William Harris
Printed Name of Witness #2

State of _Virginia_        County of _Spotsylvania_
On _September 12, 2014_ , the Grantor, _WENDRA C. KLOS_ ,
personally came before me and, being duly sworn, did state and prove that he/she is the person described
in the above document and that he/she signed the above document in my presence.

_Shelley Chick-Gravel_
Notary Signature

Notary Public,
In and for the County of _Spotsylvania_ State of _Virginia_
My commission expires: _July 31, 2018_        Seal

Send all tax statements to Grantee.

Quitclaim Deed Pg.2 (11-12)

Dated: _9/12/2014_

_Sheila Ann Williams_
Signature of Grantor

_SHEILA ANN Williams_
Name of Grantor

| | |
|---|---|
| _Teresa A. Wells_ | _Teresa A. Wells_ |
| Signature of Witness #1 | Printed Name of Witness #1 |
| _William Harris_ | _William Harris_ |
| Signature of Witness #2 | Printed Name of Witness #2 |

State of _Virginia_          County of _Spotsylvania_

On _September 12, 2014_ , the Grantor, _Sheila Ann Williams_ ,

personally came before me and, being duly sworn, did state and prove that he/she is the person described

in the above document and that he/she signed the above document in my presence.

_Shelley Chick Gravel_
Notary Signature

Notary Public,

In and for the County of _Spotsylvania_ State of _Virginia_

My commission expires: _July 31, 2018_                    Seal

Send all tax statements to Grantee.

INSTRUMENT # 140014346
RECORDED IN CLERK'S OFFICE OF SPOTSYLVANIA ON
Sep 18, 2014  AT  01:42 pm
CHRISTALYN M. JETT by WHT

Quitclaim Deed Pg.2 (11-12)

EXHIBIT

B

B6D (Official Form 6D) (12/07)

In re    **Sheila Ann Williams**                                            Case No. ____**14-36073**____
_____,
Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H W J | | C | | | | | | |
| Account No. **xxxx6820**<br><br>**Green Tree Servicing**<br>332 Minnesota St Ste 610<br>Saint Paul, MN 55101 | - | | | | Opened 1/01/07  Last Active 8/25/14<br>2nd Mortgage<br>5801 Towles Mills Road<br>Partlow, VA 22534<br>Tax Map ID: 79 9 1<br>CTA Value: $176,300.00 | | | | | |
| | | | | | Value $            176,300.00 | | | | 49,734.00 | 49,734.00 |
| Account No. **xxxxxxxx5138**<br><br>**Pnc Mortgage**<br>6 N Main St<br>Dayton, OH 45402 | - | | | | Opened 1/01/07  Last Active 9/15/14<br>1st Mortgage<br>5801 Towles Mills Road<br>Partlow, VA 22534<br>Tax Map ID: 79 9 1<br>CTA Value: $176,300.00 | | | | | |
| | | | | | Value $            176,300.00 | | | | 215,920.00 | 39,620.00 |
| Account No. | | | | | | | | | | |
| | | | | | Value $ | | | | | |
| Account No. | | | | | | | | | | |
| | | | | | Value $ | | | | | |
| **0**    continuation sheets attached | | | | | Subtotal<br>(Total of this page) | | | | 265,654.00 | 89,354.00 |
| | | | | | Total<br>(Report on Summary of Schedules) | | | | 265,654.00 | 89,354.00 |

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

Return To:
    National City Bank
    P.O. Box 8800
    Dayton, OH 45401-8800

Tax Map Reference #:
72-9-1
RPC/Parcel ID #:

Prepared By: ANGELA TSENG

    National City Bank
    P.O. Box 8800
    Dayton, OH 45401-8800

Lot1, THE CROSSINGS
SPOTSYLVANIA COUNTY

———————————————— [Space Above This Line For Recording Data] ————————————————

## DEED OF TRUST

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by

SHEILA ANN WILLIAMS and WENDRA C KLOS

                                     , as
Borrower (trustor), to
R. Brian Ball & Paul S. Bliley, City of Richmond
2 James Ctr. Richmond, VA 23219

                                     , as
Trustee, for the benefit of    National City Mortgage a division of
National City Bank
as beneficiary.

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

**VIRGINIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3047 1/01

VMP®-6(VA) (0507)
Page 1 of 15                  Initials: _S. A. W_
VMP Mortgage Solutions, Inc. (800)521-7291   _WCK_

(A) "Security Instrument" means this document, which is dated    January 4, 2007
together with all Riders to this document.
(B) "Borrower" is

SHEILA ANN WILLIAMS and WENDRA C KLOS

Borrower is the trustor under this Security Instrument.
(C) "Lender" is    National City Mortgage a division of
National City Bank
Lender is a   National Banking Association
organized and existing under the laws of   United States
Lender's address is   3232 NEWMARK DRIVE, MIAMISBURG, OH 45342

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is   R. Brian Ball & Paul S. Bliley, City of Richmond

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered
corporation   whose   principal   office   is   located   in   Virginia.   Trustee's   address   is
2 James Ctr. Richmond, VA 23219
"Trustee" is

R. Brian Ball & Paul S. Bliley, City of Richmond
Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered
corporation   whose   principal   office   is   located   in   Virginia.   Trustee's   address   is
2 James Ctr. Richmond, VA 23219
(E) "Note" means the promissory note signed by Borrower and dated    January 4, 2007
The Note states that Borrower owes Lender

TWO HUNDRED FIFTEEN THOUSAND NINE HUNDRED TWENTY & 00/100    Dollars
(U.S. $    215,920.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    January 1, 2037    . The interest rate
stated in the Note is   FIVE AND SEVEN-EIGHTHS
percent (    5.875    %).
If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in
accordance with the attached Adjustable Rate Rider.
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify]    Occup Rider |

Initials: *S.A.W*
*WCK*

VMP®-6(VA) (0507)                    Page 2 of 15                    Form 3047 1/01

2

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial instituion to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "**Escrow Items**" means those items that are described in Section 3.

(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County                      of              SPOTSYLVANIA COUNTY            :
[Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]

SEE SCHEDULE 'A' ATTACHED HERETO AND MADE A PART HEREOF

VMP-6(VA) (0507)                    Page 3 of 15                    S.A.W
                                                                   WC-K          Form 3047   1/01

3

which currently has the address of

5801 TOWLES MILL ROAD,                                                                    [Street]
                                                      [City/County], Virginia    22534    [Zip Code]
PARTLOW
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

-6(VA) (0507)                        Page 4 of 15              Initials SAW WCK          Form 3047  1/01

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

-6(VA) (0507)                           Page 5 of 15                    Initials: S.A.W
                                                                              WCK              Form 3047  1/01

5

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

-6(VA) (0507)                                Page 6 of 15                    Initials: _S.A.W_    Form 3047  1/01

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments

-6(VA) (0507)                    Page 7 of 15                    Initials: S.A.W  WC-K            Form 3047  1/01

7

as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was

VMP®-6(VA) (0507)                    Page 8 of 15          Initials: S.A.W / W.K          Form 3047   1/01

8

required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

-6(VA) (0507)                              Page 10 of 15                    Initials: _S.A.W_   Form 3047   1/01
                                                                                    _WCK_

_10_

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this

VMP®-6(VA) (0507)          Page 11 of 15          Initials: _____          Form 3047  1/01

*11*

Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

-6(VA) (0507)                          Page 12 of 15                          Initials: _____          Form 3047  1/01

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

-6(VA) (0507)                              Page 13 of 15              Initials: _____    Form 3047  1/01

13

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
SHEILA ANN WILLIAMS          -Borrower

_____ (Seal)
WENDRA C KLOS               -Borrower

_____ (Seal)        _____ (Seal)
                    -Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
                    -Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
                    -Borrower                               -Borrower

*14*

STATE OF VIRGINIA,                          STAFFORD          County, ss:

The foregoing instrument was acknowledged before me this January 4, 2007          by
Sheila Ann WILLIAMS and Wendra C. KLOS

My Commission Expires:
November 30, 2008           Notary Public      Joan M. Walker

_S.A.W_

_WCK_      Form 3047  1/01

-6(VA) (0507)          Page 15 of 15

15

2014/11/08 08:22 FAX 4349820329                                                    @002/010

Instrument# 200700000421        Page 1

LR 200700000421 1/5/2007 12:35:00 PM

Recorded in the Clerk's Office of the
SPOTSYLVANIA COUNTY, Virginia Circuit Court

Teste:                , Clerk Paul M. Metzger

Instrument Control Number

**Commonwealth of Virginia**
Land Record Instruments
Cover Sheet - Form A

[ILS VLR Cover Sheet Agent 1.0.66]

EXHIBIT
C

| | |
|---|---|
| Date of Instrument: | [1/4/2007    ] |
| Instrument Type: | [DOT    ] |
| Number of Parcels | [    1] |
| Number of Pages | [    8] |
| City ☐ County ☒ | [Spotsylvania County    ] |

(Box for Deed Stamp Only)

**First and Second Grantors**

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [WILLIAMS    ] | [SHEILA    ] | [ANN    ] | [    ] |
| [KLOS    ] | [WENDRA    ] | [C    ] | [    ] |

**First and Second Grantees**

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [BALL    ] | [R    ] | [BRIAN    ] | [TR    ] |
| [BLILEY    ] | [PAUL    ] | [S    ] | [TR    ] |

| | | |
|---|---|---|
| Grantee Address | (Name) | [SHEILA ANN WILLIAMS AND WENDRA C KLOS    ] |
| | (Address 1) | [5801 TOWLES MILL RD    ] |
| | (Address 2) | [    ] |
| | (City, State, Zip) | [PARTLOW    ] [VA ] [22534    ] |
| Consideration [53,980.00    ] Existing Debt [0.00    ] Assumption Balance [0.00    ] | | |

| | |
|---|---|
| Prior Instr. Recorded at: City ☐ County ☐ [    ] Percent. in this Juris. [    100] | |
| Book [    ] Page [    ] Instr. No [    ] | |
| Parcel Identification No (PIN) | [72-9-1    ] |
| Tax Map Num.    (if different than PIN) | [72-9-1    ] |
| Short Property Description | [LOT 1, THE CROSSINGS    ] |
| Current Property Address (Address 1) | [5801 TOWLES MILL RD    ] |
| (Address 2) | [    ] |
| (City, State, Zip) | [PARTLOW    ] [VA ] [22534    ] |

| | |
|---|---|
| Instrument Prepared by | [NATIONAL CITY BANK    ] |
| Recording Paid for by | [FIRST GUARDIAN TITLE & ESCROW    ] |
| Return Recording to    (Name) | [FIRST GUARDIAN TITLE & ESCROW    ] |
| (Address 1) | [12860 LAKERIDGE DR    ] |
| (Address 2) | [    ] |
| (City, State, Zip) | [WOODBRIDGE    ] [VA ] [22192    ] |
| Customer Case ID | [    ] [    ] [    ] |

Cover Sheet Page # 1 of 1

2014 11/08 08:23 FAX  4349820329            IVA CHILDRENS HOSP                        @003/010

Instrument# 200700000421    Page 2

Return To:
    National City Bank
    P.O. Box 8800
    Dayton, OH 45401-8800

Tax Map Reference #:
72-9-1
RPC/Parcel ID #:

Lot 1, THE CROSSINGS
SPOTSYLVANIA COUNTY

Prepared by: National City Bank

## DEED OF TRUST

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

    THIS DEED OF TRUST is made this    4th    day of    January 2007    ,
, among the Grantor,
    SHEILA ANN WILLIAMS and WENDRA C KLOS

(herein "Borrower"),

a resident of the Commonwealth of Virginia, whose full residence or business address is
    5801 TOWLES MILL ROAD PARTLOW , Virginia 22534
and    R. Brian Ball & Paul S. Bliley, City of Richmond
a resident of the Commonwealth of Virginia, whose full residence or business address is
    2 James Ctr. Richmond, VA 23219        (any one of whom may act and who are referred to
herein as "Trustee"), and the Beneficiary, National City Mortgage a division of
    National City Bank
            ,a    National Banking Association        organized and existing under
the laws of    United States            , whose address is
    3232 NEWMARK DRIVE, MIAMISBURG, OH  45342
                                    (herein "Lender").
    BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and
conveys to Trustee, in trust, with power of sale, the following described property located in the
    SPOTSYLVANIA COUNTY        , State of Virginia:
        SEE SCHEDULE 'A' ATTACHED HERETO AND MADE A PART HEREOF

which has the address of
    5801 TOWLES MILL ROAD                                        [Street]
    PARTLOW            [City], Virginia    22534    [ZIP Code] (herein "Property Address");
    TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such
rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the
foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter
referred to as the "Property";
    TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated
    January 4, 2007        and extensions and renewals thereof (herein "Note"), in the principal
sum of U.S. $        53,980.00    , with interest thereon, providing for monthly installments of principal and

| VIRGINIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT | |
|---|---|
| NATL076(VA) (0606) | Page 1 of 5
VMP Mortgage Solutions, Inc. |

Initials: SAW
WCK

Form 3847
Amended 11/05

/

2014 11/08 08:23 FAX  4349820329           VA CHILDRENS CHART           ☑004/010

Instrument# 200700000421    Page 3

interest, with the balance of the indebtedness, if not sooner paid, due and payable on    January 1, 2022         ;
the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed
of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and
convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to
encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest
indebtedness evidenced by the Note and late charges as provided in the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to
Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a
sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit
development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if
any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium
installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the
basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of
Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if
such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are
insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply
the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and
applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays
Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may
agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and
unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay
Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of
the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The
Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to
the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay  said
taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option,
either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds
held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due,
Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may
require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any
Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender,
Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held
by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the
Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by
Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations
under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust,
including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes,
assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this
Deed of Trust, and leasehold payments or ground rents, if any.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property
insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may
require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided,
that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form
acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender
shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other
security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof
of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date
notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender  is
authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or
to the sums secured by this Deed of Trust.

6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.
Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the
Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is
on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under
the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and
regulations of the condominium or planned unit development, and constituent documents.

NATL076(VA) (0608)                      Page 2 of 5                    Initials: _____        Form 3647

2014 11/08 08:23 FAX  4349820329        IVA CHILDRENS HOSP        @005/010

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any

NATL076(VA) (0608)                    Page 3 of 5                                    Form 3847

2014 11/08 08:24 FAX  4349820329          IVA CHILDRENS HOSP          ☑ 006/010

Instrument# 200700000421    Page 5

covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower (and the owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which the Property or some portion thereof is located, and by such additional or different form of advertisement as the Trustee may deem advisable, if any. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or Lender's designee may purchase the Property at any sale. Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold with special warranty of title. The recitals in Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, a reasonable commission to the Trustee, reasonable attorneys' fees and costs of title evidence; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Deed of Trust; and (d) the excess, if any, to the person or persons legally entitled thereto. Trustee shall not be required to take possession of the property prior to the sale thereof or to deliver possession of the Property to the purchaser at such sale.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. Release. Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to release this Deed of Trust and shall surrender all notes evidencing indebtedness secured by this Deed of Trust. Trustee shall release this Deed of Trust to Trustee without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21. Substitute Trustee. Lender may from time to time in Lender's discretion remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

22. Identification of Note. The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgment hereto.

NATL076(VA) (0608)       Form 3847        Page 4 of 6

S.A.W
WCK

4

2014 11/08 08:24 FAX  4349820329        VA CHILDRENS HOSP                    007/010

Instrument# 200700000421    Page 6

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed and sealed this Deed of Trust.

_____ (Seal)          _____ (Seal)
SHEILA ANN WILLIAMS            -Borrower    Wendra C. Klos            -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                              -Borrower

*(Sign Original Only)*

STATE OF VIRGINIA,              Stafford      County, ss:

The foregoing instrument was acknowledged before me this      January 4, 2007
by Sheila Ann Williams and Wendra C. Klos.

My Commission Expires:

_Nov. 30, 2008_                    _____  Joan M. Walker
                                    Notary Public

NATL076(VA) (0608)        Form 3847        Page 5 of 5

5

2014 11/08 08:24 FAX  4349820329       HYA CHILDRENS SRVS       ☐008/010

Instrument# 200700000421    Page 7

## BALLOON RIDER TO MORTGAGE, DEED OF TRUST OR SECURITY DEED

0005315139

Date **January 4 , 2007**

1. BORROWER(S)   **SHEILA ANN WILLIAMS**
   Property Address   **5801 TOWLES MILL ROAD**
   **PARTLOW Virginia 22534**

2. DEFINED TERMS; RIDER A PART OF THE SECURITY INSTRUMENT. "Rider " means this Balloon Rider to Mortgage, Deed of Trust or Security Deed which is attached to, made a part of and amends and supplements the Mortgage, Deed of Trust or Security Deed ("Security Instrument") which Borrower(s) gave to **National City Mortgage**, a division of National City Bank ("the Lender") and which is dated the same date as this Rider. The Security Instrument secures the Fixed Rate Note and Security Agreement ("Note") and covers the property described therein located at the address set forth above. The term "the Lender" includes Lender's successors and assigns. In the event there are any conflicts between this Rider and the Security Instrument the provisions of the Rider will control.

3. BALLOON NOTE. The final payment due on the Maturity Date of the Note is larger than the previous monthly payments. The final payment includes a substantial payment of principal. The Note is commonly called a "balloon note."

4. BALLOON NOTE AGREEMENT. Borrower(s) understand and agree as follows:

THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE SET FORTH IN THE NOTE AND SECURITY INSTRUMENT. THE BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN, UNPAID INTEREST AND OTHER SUMS THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. THE BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT THE BORROWER MAY OWN, OR THE BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER THE BORROWER HAS THIS LOAN WITH, WILLING TO LEND THE BORROWER THE MONEY. IF THE BORROWER REFINANCES THIS LOAN AT MATURITY, THE BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF THE BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.

5. SIGNATURES. BORROWER HAS READ AND AGREES TO ALL PROVISIONS OF THIS RIDER.

| | |
|---|---|
| **SHEILA ANN WILLIAMS** | x _Sheila Ann Williams_ |
| Type or print name | Signature |
| **WENDRA C KLOS** | x _Wendra C. Klos_ |
| Type or print name | Signature |
| _____ | x _____ |
| Type or print name | Signature |
| _____ | x _____ |
| Type or print name of | Signature |

©2006 National City Corporation
BALNRDE (06/06)

6

2014-11/08 08:24 FAX 4349820329     DYA CLOPRESS INC     ☒009/010

Instrument# 200700000421     Page 8

## BORROWER OCCUPANCY RIDER

This Borrower Occupancy Rider is made this 4th day of January , 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure said borrower's Note to National City Mortgage a division of National City Bank (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

5801 TOWLES MILL ROAD

PARTLOW, Virginia 22534

Additional Covenants.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**BORROWER OCCUPANCY COVENANT**

Borrower agrees to occupy the property as borrower's principal residence within sixty (60) days after the date of the Security Instrument.  If Borrower does not so occupy the property, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by law as of the date of the Security Instrument.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Borrower Occupancy Rider.

_____
Borrower SHEILA ANN WILLIAMS

_____
Borrower WENDRA C KLOS

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower

OCCRIDER                                                      (04/05)

7

2014 11/08 08:24 FAX  4349820329        UVA CHILDRENS HOSP        ☒ 010/010

Instrument# 200700000421    Page 9

All that certain lot, piece or parcel of land, lying and being in Berkeley District, Spotsylvania County, Virginia, containing 5.002 acres, more or less, and designated as Lot 1, THE CROSSINGS, on plat of survey made by Kniseley & Associates, P.C., Certified Land Surveyor dated January 4th, 1989 recorded April 14th, 1989 in the Clerk's Office of the Circuit Court of Spotsylvania County, Virginia, in Plat File 2, pages 131 thru 135, to which plat reference is hereby made for more particular description.

This Instrument Prepared By
Melinda Dill
After Recording Return To
National City Mortgage
P.O. Box 8800
Dayton, OH  45401-8800
(937) 910-1783

Parcel ▮▮▮▮▮

SPACE ABOVE THIS LINE FOR RECORDER'S USE

NCM#: ▮▮▮▮▮

MIN and MERS Phone:

WILLIAMS, SHEILA ANN

Recording District; SPOTSYLVANIA

ASSIGNMENT OF Deed of Trust

For value received, the undersigned, hereby grants, assigns and transfers to: BANK OF AMERICA located at 31 West Patrick Street, Frederick, MD 21701, all beneficial interest under that certain Deed of Trust dated 1/4/2007 executed by:

   Trustor(s)   SHEILA ANN WILLIAMS      WENDRA C KLOS

to R. BRIAN BALL & PAUL S. BLILEY, CITY OF RICHMOND for NATIONAL CITY MORTGAGE, A DIVISION OF NATIONAL CITY BANK, in the amount of: "53,980.", recorded 1/5/2007 as Instrument No.: LR 200700000421 in Book/Volume:  Page:  of the Official Records of SPOTSYLVANIA County, Virginia describing the land therein:

Property Address:    5801 TOWLES MILL RD, PARTLOW, VA  22534

Legal Description As Per Deed of Trust Referred To Herein

Together with the Note or Notes therein described or referenced to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

   National City Mortgage Co, a subsidiary of National
   City Bank

   Jeff Blum, Supervisor

State of OHIO     County of MONTGOMERY

On 6/8/2007 before me, Joseph L. Niswonger the undersigned, a Notary Public in and for the State of OHIO, personally appeared Jeff Blum, Supervisor of National City Mortgage Co, a subsidiary of National City Bank personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that for his signature on the instrument the person, or the entity upon behalf of which he acted, executed the instrument.

JOSEPH L. NISWONGER, Notary Public
In and for the State of Ohio
My Commission Expires Nov 9, 2008

Joseph L. Niswonger, Notary Public in and for the State of OHIO
My Commission Expires  11/9/2008    My County of Residence  MONTGOMERY

RECORD RECORD

When Recorded Return To:
Green Tree Servicing LLC
Attn: Document Custody, T322
7360 South Kyrene Rd
Tempe, AZ 85283



OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2009-0027242 01/13/09 01:16 PM
5 OF 5

PALUMBOR

# LIMITED POWER OF ATTORNEY

| | |
|---|---|
| **TO:** | **GREEN TREE SERVICING LLC** |
| **FROM:** | **Bank of America, National Association** |
| **DATED:** | **11/3/08** |
| **FOR:** | **BOA 2nd Lien Mortgage Loan Transfer – Nov 2008** |

## POWER OF ATTORNEY

Bank of America, National Association (the "Owner") hereby appoints Green Tree Servicing LLC or any affiliate thereof that is servicing the Mortgage Loan (the "Servicer") as its true and lawful attorney-in-fact to act in the name, place and stead of the Owner for the purposes set forth below. This Limited Power of Attorney is given pursuant to a certain Servicing Agreement, by and between the Owner and Servicer, dated as of October 31, 2008 (the "Agreement") to which reference is made for the definition of all capitalized terms herein.

Now, therefore, the Owner does hereby constitute and appoint the Servicer the true and lawful attorney-in-fact of the Owner in the Owner's name, place and stead with respect to each Mortgage Loan serviced by the Servicer pursuant to the Agreement for the following, and only the following, purposes:

1. To execute, acknowledge, seal and deliver deeds, deed of trust/mortgage note endorsements, assignments of deed of trust/mortgage and other recorded documents, tax authority notifications and other instruments of sale, conveyance and transfer, full or partial releases, subordinations, appropriately completed, with all ordinary or necessary endorsements, acknowledgments, affidavits, and supporting documents as may be necessary and proper to effect the execution, delivery, conveyance or recordation of filing of said documents.

2. To execute and deliver affidavits of debt, substitutions of trustee, substitutions of counsel, non-military affidavits, notices of rescission, foreclosure deeds, transfer tax affidavits, affidavits of merit, verifications of complaint, notices to quit, bankruptcy declarations for the purpose of filing motions to lift stays and other documents or notice filings on behalf of the Owner in connection with foreclosure, bankruptcy and eviction actions.

3. To endorse and/or assign any borrower or Mortgagor's check or negotiable instrument received by the Servicer as a payment under a Mortgage Loan.

The Owner intends that this Limited Power of Attorney be coupled with an interest and is not revocable.

The Owner further grants to its attorney-in-fact full authority to act in any manner reasonable, proper and necessary to exercise the foregoing powers, and ratifies every such act that Servicer may lawfully perform in exercising those powers by virtue hereof.

The Servicer shall indemnify, defend and hold harmless the Owner, its successors and assigns, from and against any and all losses, costs, expenses (including, without limitation, actual attorneys' fees), damages, liabilities, demand or claims of any kind whatsoever ("Claims") arising out of, related to, or in connection with (i) any act taken by the Servicer pursuant to this Limited Power of Attorney, which act results in a Claim solely by virtue of the unlawful use of this Limited Power of Attorney (and not as a result of a Claim related to the underlying instrument with respect to which this Limited Power of Attorney has been used), or (ii) any use or misuse of this Limited Power of Attorney in any manner or by any person not expressly authorized hereby.

IN WITNESS WHEREOF, the Owner has executed this Limited Power of Attorney this 3rd day of November, 2008.

BANK OF AMERICA, NATIONAL
ASSOCIATION

By: _____

Title: ___SVP_____

2

STATE OF FLORIDA          )
                          ) ss.
COUNTY OF _Duval_         )

On this _3_ day of November, 2008, before me appeared _Susan Edris Welsh_____, to me personally known, who, being by me duly sworn, did say that he/she resides at _Ponte Vedra Beach, FL_____, that he/she is the _Senior Vice President_____ of Bank of America, National Association, a _National Bank_, the company described in and which executed the foregoing instrument, and that he/she signed his/her name thereto by order of the Board of Directors of such company.

[Stamp]

_____
Notary Public

My Commission Expires

NOTARY PUBLIC-STATE OF FLORIDA
Margaret Donnelly
Commission # DD584774
Expires: AUG. 29, 2010
BONDED THRU ATLANTIC BONDING CO., INC.

3



EXHIBIT

D

B6A (Official Form 6A) (12/07)

In re   **Sheila Ann Williams**                                              ,          Case No.   **14-36073**
                                        Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **5801 Towles Mills Road**<br>**Partlow, VA 22534**<br>**Tax Map ID: 79 9 1**<br>**CTA Value: $176,300.00** | **Fee simple** | - | **176,300.00** | **265,654.00** |

|  |  |  |
|---|---|---|
| Sub-Total > | **176,300.00** | (Total of this page) |
| Total > | **176,300.00** |  |

_____0_____  continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

COUNTY OF SPOTSYLVANIA

| DUE DATE |
|---|
| 12/05/14 |

REAL ESTATE TAXES FOR 2014    Rate:   .86 /$100 assessed

Current Owner: 4456372

Sheila Ann Williams
5801 Towles Mill Rd
PARTLOW VA 22534

January 1 Owner: 3330271
Sheila Ann Williams or
Wendra C Klos
5801 Towles Mill Rd
PARTLOW VA 22534



**EXHIBIT**

tabbies®

**E**

| YEAR/HALF | BILL# | TYPE | ASSESSMENT | YEARS TAX | | AMOUNT OWED |
|---|---|---|---|---|---|---|
| Map# _72_ - _9_ - _1_ - | | | 5801 Towles Mill Rd | | | |
| Book  I 0000 / 419 | | | Area:      4.74 Acres | | | |
| | | | The Crossings | | Lot 1 | |
| 2014   2   1821482 | | Land | 42,400 | | | |
| | | Bldg | 133,900 | | | |
| | | Total | 176,300 | 1,516.18 | 2 Half Tax | 758.09 |

| TOTAL DUE BY DUE DATE |
|---|
| 758.09 |

PLEASE SEE REVERSE SIDE FOR INTEREST INFORMATION.
RETAIN THIS PORTION FOR YOUR RECORDS. THIS ALONG WITH YOUR CANCELLED CHECK IS YOUR RECEIPT.